LEE LITIGATION GROUP, PLLC
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARCOS MIGUEL GONZALEZ,
*on behalf of himself, FLSA Collective Plaintiffs and the Class,*

    Plaintiff,

v.

GRAMERCY FARMER & THE FISH, LLC, HUDSON FISH, LLC
    d/b/a HUDSON FARMER & THE FISH, PURDY'S FARMER & THE FISH, LLC, MICHAEL KAPHAN, EDWARD TAYLOR, SUZIE KAPHAN, and DONNA TAYLOR,

    Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff MARCOS MIGUEL GONZALEZ ("Plaintiff" or "Plaintiff GONZALEZ"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants GRAMERCY FARMER & THE FISH, LLC, HUDSON FISH, LLC d/b/a HUDSON FARMER & THE FISH, PURDY'S FARMER & THE FISH, LLC, (collectively, "Corporate Defendants"), MICHAEL KAPHAN, EDWARD TAYLOR, SUZIE KAPHAN, DONNA TAYLOR ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

1

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages for all hours worked due to time shaving (2) unpaid wages for all hours worked due to an invalid meal credit that could not be used, (3) failure to pay wages due for the last week of former employees' employment, (4) liquidated damages and statutory penalties, and (5) attorneys' fees and costs.

2. Plaintiff GONZALEZ alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages for all hours worked due to time shaving (2) unpaid wages for all hours worked due to an invalid meal credit that could not be used, (3) failure to pay wages due for the last week of former employees' employment, (4) liquidated damages and statutory penalties, and (5) attorneys' fees and costs.

3. Plaintiff GONZALEZ also alleges, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*, that he is entitled to recover from Defendants for Defendants' unlawful discrimination against him on the basis of his disability and for their retaliation against him for asserting his rights under the foregoing statutes.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the unlawful acts for which Plaintiff seeks relief took place in that District.

# PARTIES

*Plaintiff:*

6. Plaintiff GONZALEZ is a resident of Bronx County, New York.

*Farmer & the Fish Restaurants:*

7. Defendants own(ed) and operate(d) a chain of restaurants in New York State under the common name Farmer & the Fish. The locations and their addresses are as follows:

   a) 245 Park Ave S, New York, NY 10003 ("Grammercy Farmer & the Fish")

   b) 11 River Street, Sleepy Hollow, NY 10591 ("Hudson Farmer & the Fish")

   c) 100 Titicus Road, North Salem, NY 10560 ("Purdy's Farmer & the Fish")

   (collectively referred to as "the Restaurants").

8. Grammercy Farmer & the Fish was renamed "Big Fish" or, alternately, "The Fish on the Park" after Plaintiff's period of employment and now appears to be under new ownership.

9. The Restaurants are operated by Defendants as a single integrated enterprise. Specifically, they are engaged in related activities, share common ownership, and have a common business purpose.

   a) The Restaurants are engaged in the same business of operating restaurants that serve seafood and fresh vegetables.

   b) The Restaurants all substantially rely on Defendants' farm in North Salem, New York, for their produce. The Restaurants all substantially rely on the Down East Seafood Company, owned by Defendant Edward Taylor, for their seafood. Such reliance has a central role in Defendants' marketing and consumer appeal. *See* **Exhibit A**.

   c) The Restaurants conducted business under a common trade name "Farmer & the Fish," share similar décor and appearance, and use the same logo. *See* **Exhibit B**.

   d) The Restaurants are essentially three branches of the same restaurant. The Instagram pages of Purdy's Farmer & the Fish and Hudson Farmer & the Fish refer to each other as "sister" restaurants. During Plaintiff's period of

3

    employment, the Gramercy Farmer & the Fish referred to itself as "our New York City counterpart to Purdy's Farmer & the Fish." *See* **Exhibit C**.

  e) The Restaurants are commonly owned by the Individual Defendants (see below).

  f) The Restaurants sell similar menu items.

  g) The Restaurants maintain centralized labor relations and human resources, and utilize the same payroll system for employees.

  h) The Restaurants implement the same wage and hour policies and procedures established by Defendants.

*Defendants:*

10. Corporate Defendant GRAMMERCY FARMER & THE FISH, LLC is a domestic business corporation organized under the laws of the State of New York with its principal place of business and address for service of process at 245 Park Ave S, New York, NY 1000.

11. Corporate Defendant HUDSON FISH, LLC d/b/a HUDSON FARMER & THE FISH is a domestic business corporation organized under the laws of the State of New York with its principal place of business at 11 River St, Sleepy Hollow, NY 10591 and an address for service of process at c/o Purdy's Farmer & the Fish, 100 Titicus Road, North Salem, New York 10560.

12. Corporate Defendant PURDY'S FARMER & THE FISH, LLC is a domestic business corporation organized under the laws of the State of New York with its principal place of business and address for service of process at 100 Titicus Road, North Salem, New York 10560.

13. Individual Defendant MICHAEL KAPHAN is a co-owner and co-founder of the Restaurants. As reported by Corporate Defendants' website, since 2012, he "has been the chef-farmer behind the Farmer & the Fish brand, first at the Purdy's restaurant on the farm and in 2016 at the Gramercy location in the heart of Manhattan."[1]

---

[1] https://www.farmerandthefish.com/purdys/team/michael-kaphan (last viewed 08/25/20)

4

14. Individual Defendant EDWARD TAYLOR is a co-owner and co-founder of the Restaurants. As reported by Corporate Defendants' website, he is also the owner of Downeast Seafood Co., from which he "sources the highest-quality sustainable seafood, highlighted in the [Farmer & the Fish] restaurants raw bar and the many dishes [Michael] Kaphan creates with his seasonal catches."[2]

15. Individual Defendant SUZIE KAPHAN is a co-owner of the Farmer & the Fish.[3]

16. Individual Defendant DONNA TAYLOR is a co-owner of the Farmer & the Fish.[4]

17. Individual Defendants exercised functional control over the business and financial operations of the Restaurants and over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and Class Members. With respect to Plaintiff, FLSA Collective Plaintiffs and Class Members, Individual Defendants exercised their power to (and also delegated to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) supervise and control employee work schedules or conditions of employment, (iv) maintain employment records, and (iv) otherwise affect the quality of employment. Individual Defendants had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs and Class Members.

18. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

19. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

---

[2] https://www.farmerandthefish.com/purdys/team/edward-taylor (last viewed 08/25/20)
[3] https://www.farmerandthefish.com/purdys/team/suzie-kaphan (last viewed 08/25/20)
[4] https://www.farmerandthefish.com/purdys/team/donna-taylor (last viewed 08/25/20)

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

20. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to cooks, line cooks, food preparers, dishwashers, hosts/hostesses, porters, expeditors, servers, runners, bussers, bartenders and barbacks) employed by Defendants at the Restaurants on or after the date that is three (3) years before the filing of this Complaint ("FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving and invalid meal credits. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

22. Further, with respect to employees who have left Defendants' employment (including but not limited to servers, runners, bussers, bartenders and barbacks) (the "Former Employee Subclass"), Defendants failed to pay them wages for at least the last week of their employment as retribution for their refusal to sign a legal release agreement.

23. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

24. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to cooks, line cooks, food preparers, dishwashers, hosts/hostesses, porters, expeditors, servers, runners, bussers, bartenders and barbacks) employed by Defendants at the Restaurants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

25. At all relevant times, Plaintiff and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving and an invalid meal credit. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

26. Further, with respect to employees who have left Defendants' employment (including but not limited to servers, runners, bussers, bartenders and barbacks) (the "Former Employee Subclass"), Defendants failed to pay them wages for at least the last week of their employment as retribution for their refusal to sign a release agreement.

27. Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

7

28.     The proposed Class and Subclass are so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) Class Members in both the Class and the Former Employee Subclass.

29.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class or Former Employee Subclass, and the relief sought is typical of the relief, which would be sought by each member of the Class or Subclass in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay them regular and overtime wages for all hours worked due to time shaving and an invalid meal credit. All Subclass Members were subject to the same corporate practices of Defendants, failing to pay them wages for the last week or more of their employment in retribution for their refusal to sign a legal release agreement.

30.     Defendants failed to provide proper wage notices and failed to provide proper wage statements to Class Members in violation of the NYLL.

31.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34. Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions

provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

35. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a) Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

   b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

   c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

   d) Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

   e) Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' time shaving practices;

   f) Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' practice of taking meal credits for meals that employees were not given an opportunity to actually consume;

   g) Whether it was a regular practice of Defendants' to withhold departing employees' last week if pay if the departing employees refused to sign a legal release agreement;

   h) Whether Defendants provided proper wage statements to Class Members per requirements of the NYLL; and

   i) Whether Defendants provided proper wage notices to Class Members per requirements of the NYLL.

## **STATEMENT OF FACTS**

36. From in or about May 2019 until in or about December 2019, Plaintiff GONZALEZ was employed by Defendants at the Grammercy Framer & the Fish in Manhattan at $15.00/hour.

37. From in or about May 2019 until in or about August 2019, Plaintiff GONZALEZ was employed as a "Porter" and was responsible for cleaning and maintenance at the Grammercy

restaurant. During this period, he worked Monday and Saturday from 7:00 am to 4:00 pm and Friday and Sunday from 10:00 am to 10:00 pm.

38. From in or about August 2019 until in or about December 2019, Plaintiff GONZALEZ was employed as an "Oyster Guy" and was responsible for cracking open and serving oysters. During this period, he worked Wednesday through Sunday from 5:00 pm to 11:00 pm.

39. Throughout Plaintiff's entire period of employment, Defendants always shaved 30 minutes from his hours worked in each shift for a meal break.  However, the restaurant was so busy that he could not actually take his break four days a week.

40. Throughout Plaintiff's entire period of employment, Defendants always deducted $30.00/week from his wages as a meal credit. However, Plaintiff never received the benefit of this credit because he was not allowed to take meal breaks.

41.  In or about December 2019, Plaintiff became sick while working with some chemicals at the Grammercy Farmer & the Fish. Given that he has asthma, he could no longer work, and so he told his supervisor that he needed to go home and would probably have to take some time off to recover, given the severity of his symptoms.  He was told that if he went home, he would be fired. But he needed to go home because of his illness, so he was fired.  Defendants then asked him to sign a legal release.  When he refused to do so, Defendants withheld his last week of pay.

42. Throughout his employment with Defendants, Plaintiff regularly observed and spoke to his co-workers about Defendants' pay practices and policies. Based on Plaintiff's direct observations and conversations with other employees at the Grammercy Farmer & the Fish,

11

Plaintiff, FLSA Collective Plaintiffs and Class Members were subjected to the same unlawful employment practices, including time shaving and invalid meal credits.

43. At all relevant times, Defendants automatically shaved thirty (30) minutes per shift from employees' hours worked based on purported meal breaks. Based on Plaintiff's experience and observations, however, Plaintiff and all other employees at the Restaurants were not able to take their meal breaks and were required to work through such breaks on a regular basis. Nonetheless, Defendants automatically and indiscriminately deducted a thirty (30) minute meal break from the employees' compensable work time for each shift instead of tracking actual break times (or the absence thereof) with their readily available punch clock system. Plaintiff also observed that Defendants' took from employees approximately $30/week for meals that employees did not actually have an opportunity to consume. Through these practices, Defendants categorically reduced their employees' compensable hours every week. As a result of Defendants' time shaving and invalid meal credits, Plaintiff, FLSA Collective Plaintiffs and the Class were not paid compensation for all hours worked.

44. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class for all regular or overtime hours worked due to Defendants' time shaving and invalid meal credit, in violation of the FLSA and/or the NYLL.

45. On information and belief, Defendants' regularly withhold the final paycheck of departing employees who refuse to sign legal releases.

46. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

47. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

48. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

49. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

50. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

51. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages due because of time shaving and an invalid meal credit, in violation of the FLSA.

52. Defendants knowingly and willfully failed to pay members of the Former Employee Subclass their last paycheck when they refused to sign a legal release.

53. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

54. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

55. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

56. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

57. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including unpaid overtime wages, plus an equal amount as liquidated damages.

58. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW

59. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

60. At all relevant times, Class Members and Subclass Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

61. Defendants knowingly and willfully failed to pay Plaintiff and Class Members the full amount of regular and overtime wages as a result of time shaving and taking an invalid meal credit, in violation of the New York Labor Law.

62. Defendants knowingly and willfully failed to pay members of the Former Employee Subclass their last paycheck when they refused to sign a legal release.

63. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the New York Labor Law.

64. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the New York Labor Law.

65. Due to the Defendants' New York Labor Law violations, Plaintiff, Class Members, and Subclass Members are entitled to recover from Defendants unpaid wages due to time shaving and an invalid meal credit, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

## COUNT III

### DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292 *et seq*.)**
**(brought on Plaintiff's behalf only)**

66. Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

67. The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

68. Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of his disability. Defendants knew Plaintiff had asthma, and he need to go home because his asthma had become aggravated when he handled chemicals in the course of his duties as an employee for Defendants. In requesting to take the rest of the day off, he was requesting a reasonable accommodation that would not have placed an undue burden on Defendants.

69. Nevertheless, Defendants refused to accommodate this request when they fired Plaintiff after he told them he had to go home for medical reasons. Defendants then further retaliated against Plaintiff when they withheld his last week of pay as retribution for his refusal to sign a legal release. Such retaliation is prohibited by the New York State Human Rights Law, which provides that it shall be an unlawful employment practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article." New York State Executive Law § 296(7).

70. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## COUNT IV

### DISCRIMINATION AND RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

**(N.Y.C. Admin. Code § 8-101 *et seq*)**
**(brought on Plaintiff's behalf only)**

71. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

72. The New York City Administrative Code §8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national

16

origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

73. Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff on the basis of his disability. Defendants knew Plaintiff had asthma, and he needed to go home because his asthma had become aggravated when he handled chemicals in the course of his duties as an employee for Defendants. His request to take the rest of the day off was a request for a reasonable accommodation that would not have placed an undue burden on Defendants.

74. Nevertheless, Defendants refused to accommodate this request when they fired Plaintiff after he told them he had to go home for medical reasons. Defendants then further retaliated against Plaintiff when they withheld his last week of pay as retribution for his refusal to sign a legal release.

75. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid regular and unpaid wages due under the FLSA and NYLL;

d. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

e. An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the NYLL;

f. An award of all applicable damages under the NYSHRL and the NYCHRL;

g. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h. Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

i. Designation of this action as a class action pursuant to F.R.C.P. 23;

j. Designation of Plaintiff as Representative of the Class; and

k. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.

Dated: November 10, 2020

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:  /s/ C.K. Lee

C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 1976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*